396 So.2d 793 (1981)
Jack Richard BARFIELD, Appellant,
v.
STATE of Florida, Appellee.
No. UU-419.
District Court of Appeal of Florida, First District.
March 27, 1981.
As Corrected on Denial of Rehearing May 4, 1981.
Philip J. Padovano and William W. Corry, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Judge.
Barfield appeals his conviction for possession of cocaine, entered following his conditional nolo plea which reserved the right to appeal the denial of his motion to suppress. He relies primarily upon St. John v. State, 356 So.2d 32 (Fla. 1st DCA 1978), as requiring reversal because it commands the trial court to make factual findings that the informant was credible or his information otherwise reliable, and, he argues that since no such findings were made in the instant case, the lower court erroneously denied the motion to suppress. The holding in St. John has since been eroded by Baxter v. State, 390 So.2d 475 (Fla. 1st DCA 1980), by permitting a probable cause determination to be upheld if the record is found adequate to support an implicit finding of veracity. The task of the reviewing court is to determine, *794 as in generally all other cases then, whether, in the absence of findings by the trial court, there is a record foundation supporting the ultimate determination made. After reviewing the record in the case before us, we are convinced that the court's probable cause holding was sustained by competent and substantial evidence.
The facts culminating in appellant's arrest and the subsequent search of his vehicle which uncovered a quantity of cocaine are, as revealed at the suppression hearing, the following: Officer Donaldson of the Tallahassee Police Department was informed by another officer in the vice department that the Drug Enforcement Administration had information that a "source" was in town to contact a "subject" about purchasing a large quantity of marijuana. Donaldson was informed by Officer Runo, who did not testify, that the source had been an informant in other drug transactions, and that the source would place a telephone call to the subject, named Jack. Donaldson met the source at a motel room where the latter made the call. A male answered, advising that Jack was not there but would return later. Donaldson instructed the source to call him when he made contact with Jack. Subsequently, the source called Donaldson with information he would meet Jack at room 207 in Howard Johnson's Motel to discuss a marijuana purchase. Donaldson joined Officer Newman and two other police officers who were surveilling the room. Newman told Donaldson he had seen a white male enter the room with the source. While they were continuing their surveillance, a woman came from the room and advised the officers that the suspect had discussed a marijuana and cocaine deal with them. Later, appellant left the room, entered a car in the parking lot, and drove away. The officers obtained the tag number of the car and ascertained it was registered to appellant, Jack Barfield. The source told the officers that he and appellant had discussed his buying 1,000 pounds of marijuana and that appellant would return in a few hours with 1/4 ounce of cocaine which the source would purchase for $400.
The officers waited for appellant in room 207. Approximately three hours later appellant returned to the room, and was arrested, read his rights and searched. The officers found no cocaine or other narcotics on him. Appellant was then asked the location of his car. He replied that his car had broken down, forcing him to hitchhike. Meanwhile, Officer Newman, who had remained outside the motel, radioed that he had stopped appellant's car, driven by Barfield's female companion. Donaldson entered the car, searched it without a warrant and opened the console between the seats and there found a bag of cocaine. The trial judge ruled that while the officers did not have probable cause to obtain a search warrant prior to appellant's return to the motel during the stakeout, once he returned, based upon their personal observations and the information received from their sources, there was probable cause to believe, as required by Section 933.02(4)(c), Florida Statutes (1979), that an illegal substance was "being held or possessed."
Although this case does not involve  as did Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)  an application for a search warrant, it is now clear that the same tools of analysis may be applied to a judicial proceeding, such as a pretrial suppression hearing, involving the propriety of an officer's warrantless search of an automobile.[1] The rule of Aguilar and the heart of what Spinelli later dubbed "Aguilar's two-pronged test," 393 U.S. at 413, 89 S.Ct. at 489, was contained in the following single paragraph:
Although an affidavit may be based on hearsay information and need not reflect *795 the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable."
378 U.S. at 114-15, 84 S.Ct. at 1514 (citations omitted). It becomes immediately apparent that the two prongs of the Aguilar test are in the conjunctive, thus requiring the state to present evidence showing (1) the basis of the informant's knowledge that the narcotics were where the informant claimed they were, and (2) the veracity of the information provided. On the other hand, the two spurs of the veracity prong are in the disjunctive and so may be proven alternatively. One commentator has offered the following outline[2] to illustrate the two requirements which must be independently established:
The Trustworthiness of Hearsay
I. The Basis of Knowledge Prong
II. The Veracity Prong
A. The Credibility Spur
B. The Reliability Spur
Both prongs may be satisfied by two methods; intrinsically or extrinsically. The magistrate is required to refer to extrinsic evidence only if the intrinsic proofs are deemed deficient under Aguilar's standards. Spinelli, 393 U.S. at 415, 89 S.Ct. at 588-89.
As to the first prong, Aguilar-Spinelli requires that the intrinsic recitations in the affidavit inform the magistrate how the source came about his information  whether directly, through personal observations by the informant of the defendant's alleged criminal activity, or indirectly, through information received by the secondary source from tertiary sources, if the secondary source explains why his sources were credible and their information otherwise reliable. 393 U.S. 416, 89 S.Ct. 589. We consider that the evidence presented by the state at the hearing below was more than adequate to satisfy the test's first requirement since the officers unequivocally stated that their source's knowledge of criminal activity was based upon a conversation between the source and the defendant relating to an intended drug transaction.
Whether the proof furnished as to the second was sufficient is, however, a far more troublesome issue to resolve. The only attempt made to establish the source's credibility was the simple affirmative answer to a question whether the source had "been an informant in any other drug transactions... ." While we may accept this assertion as properly established, we don't know from this record whether the informant had given information leading to an arrest and/or convictions; we don't know the general type of the information which was previously furnished; nor do we know whether, as a result of an arrest, if any, incriminating evidence was seized which the informant had indicated would be turned up. Finally, we know nothing from the testimony whether the information given by the source had ever proved to be correct or incorrect. The meager information supplied at the motion to suppress hearing is hardly different in kind from the conclusory statement made by the affiant in Spinelli that his informant was reliable, but offered the magistrate no reasons in support of his conclusion. As in Spinelli, a magistrate "could not credit it without abdicating his constitutional function ..." that warrants not issue but upon probable cause. Id. To the same effect, see Davis v. State, 346 So.2d 141 (Fla. 1st DCA 1977); Weisberg v. State, 348 So.2d 385 (Fla.2d DCA 1977); Davis v. State, 376 So.2d 479 (Fla. 1st DCA 1979).
Clearly, the intrinsic evidence relating to the first disjunctive spur under the veracity prong did not establish the informant's credibility. It remains to be seen, however, whether the information supplied by the informant was properly accepted as otherwise reliable. Intrinsically, such proof may *796 be offered by several distinct but generally recognized means: by a declaration against penal interest, by the affiant's knowledge of the defendant's reputation for illegal activity, or by information conveyed by a citizen-informer.[3] While United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), recognizes that both reputation and a declaration against penal interest may, when considered in connection with the other circumstances supplied in an affidavit, furnish probable cause to search, both factors were non-existent here. The testifying officers stated nothing about the defendant's prior reputation as a dealer in narcotics. Additionally, the source's information to the officers relating to the arrangements for a controlled buy of narcotics hardly comes within the category of a declaration against penal interest, recognized in Harris as carrying its own indicia of credibility. The informer who supplied information to the officers in Harris admitted that he had on more than one occasion in the recent past purchased illegally distilled whiskey from the defendant. No similar admissions were present here.
There remains yet another means intrinsic to the facts recited by which it may be determined that the information provided was reliable. The source's information that defendant had agreed to sell the narcotics to him was corroborated by his companion, an unidentified woman who was present in the room when the transaction took place. While the state offered no evidence as to her credibility, there is a well recognized exception to the requirement that her credibility need be established if her status is in fact that of a citizen-informer. The distinction between the citizen-informer and the police informant "from the criminal milieu" has been judicially recognized in a number of jurisdictions, e.g., Walker v. State, 196 So.2d 8 (Fla. 3d DCA 1967); Schmidt v. State, 17 Md. App. 492, 302 A.2d 714 (1973); People v. Hester, 39 Ill.2d 489, 237 N.E.2d 466 (1968); State v. Paszek, 50 Wis.2d 619, 184 N.W.2d 836 (1971); People v. Schulle, 51 Cal. App.3d 809, 124 Cal. Rptr. 585 (1975). If the state can present evidence showing that the informer is in fact a one-time informer, motivated not by the desire for pecuniary gain, but by the desire to further the ends of justice, no prior "track record" of the informer's good past performance need be submitted to have his information credited.
Since the burden of establishing probable cause to conduct a warrantless search is upon the state, it was necessary for it to prove that the unidentified woman was a citizen-informer, as distinguished from a police informant. A California decision clearly delineates the distinction between the police informer and the citizen informer. In People v. Herdan, 42 Cal. App.3d 300, 116 Cal. Rptr. 641 (1974), the court rejected the state's argument that an informant was a citizen-informer after the court had reviewed the record showing that the informant had cooperated with police officers by participating in a controlled buy of narcotics with the defendant. The court commented that the informer's conduct "in setting up the appellant ... went far beyond the type of conduct usually ... performed by the citizen-informer who, unexpectedly witnessing or suffering a crime, informs law enforcement officers regarding his observations but does nothing more." 116 Cal. Rptr. at 644.
We find the same deficiency present in the case at bar. The female companion of the informant who volunteered the information relating to the intended sale of narcotics was also identified by the officer at the hearing as a source who had been present in the room at the time the deal was struck for the purchase of narcotics. As in Herdan, the informant's active involvement in setting up the defendant for the arrest tends to cast doubt upon her status as a citizen-informer. In our judgment, the state has failed to meet its burden of revealing her status as such, and the search cannot be sustained on that basis.
Spinelli, however, recognizes one final means of substantiating Aguilar's veracity prong when the internal recitations within *797 the affidavit do not reflect that the informer is credible or that his information is otherwise reliable. The magistrate may then examine the independent observations, extrinsic to the internal recitations, made by the affiant-officers as a means of shoring up the intrinsic deficiencies. When so doing, the magistrate must ask himself the following: "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's test without independent corroboration?" Spinelli, 393 U.S. at 415, 89 S.Ct. at 588.
Here we have several facts directly observed by the officers which ostensibly corroborate the reliability of the source's information that Barfield was a trafficker in narcotics: Barfield's two appearances at the motel at the approximate times the source stated he would arrive, and the conduct by the driver of the automobile after Barfield had exited it. Barfield's two appearances at the motel, standing by themselves, import no sinister, criminal implications. And it has been argued by some commentators,[4] and held by some courts, United States v. McLeroy, 584 F.2d 746 (5th Cir.1978); United States v. Rasor, 599 F.2d 1330 (5th Cir.1979), that there should be some corroboration of the information furnished by the officers' observation of incriminating circumstances. Such a requirement, however, is the subject of considerable controversy and may be correct within a given context, yet inapplicable within another. LaFave states that
[f]or corroboration to be incriminating rather than innocent, it is not necessary that the events observed by the police supply probable cause by themselves or that they point unequivocally in the direction of guilt. It is sufficient that they are "unusual in inviting explanation," though "as consistent with innocent as with criminal activity."
LaFave, Probable Cause From Informants: The Effects of Murphy's Law on Fourth Amendment Adjudication, 1977 U. of Ill. L. Forum 1, 55 (footnotes omitted).
The nature of the circumstances observed by surveilling officers may support a reasonable inference that the information conveyed to them was reliable. For example, in People v. Jordain, 10 Ill. App.3d 46, 48, 294 N.E.2d 3, 4 (1st Dist. 1973), the reliability of a source's information that he had seen narcotics sold within a certain record shop was corroborated by the surveilling officers' personal observations "of known narcotic addicts entering the [shop's] premises, speaking with the clerk, going to the rear of the store and then exiting with no apparent purchase." Other cases recognize that the reliability of the information furnished may be corroborated in those situations where the informant has cooperated closely with the police in making a controlled buy of narcotics. In such instances the risk of falsehood is felt diminished because of the "physical proximity and actual participation of the informant's intrigue" by the police, so that it is not "independent police work" which corroborates it, but rather, "the police corroboration is [said to be] a co-ordinant and intrinsic part of the informer's operation." State v. Gamage, 340 A.2d 1, 16 (Me. 1975). See also State v. Barrett, 132 Vt. 369, 320 A.2d 621 (1974). These cases are to be distinguished from those in United States v. McLeroy, supra and United States v. Rasor, supra, in which the government not only failed to offer any facts revealing the credibility of their informants, but also failed to show how the informants came about their information, or, finally, to produce any evidence disclosing a combined cooperative effort by the informers and the officers.
How much corroboration of innocent details is needed to support a conclusion that a source's information is otherwise reliable is of course a very difficult question to answer. Perhaps it can only be resolved by *798 an analysis of all the circumstances in a given case. One commentator has suggested that the amount of "verification ... needed ... depends upon how far short of Aguilar's threshold the initial recitation fails... . The more you have, the less you need; the less you have, the more you need." Moylan, supra, n. 2 at 778.
Here the information given the police officers was corroborated by both their observations of Barfield's appearances at the motel, and by the joint, cooperative efforts of the informant and the officers, working in close proximity with one another, so that the activity of the officers became, in effect, "a co-ordinate and intrinsic part of the informer's operation." A magistrate, or, in this case, the judge presiding at a suppression hearing, could reasonably consider from the totality of all the circumstances that there was probable cause to conduct the warrantless search of Barfield's automobile.
AFFIRMED.
LARRY G. SMITH and SHIVERS, JJ., concur.
NOTES
[1] Indeed, Spinelli stated that the same "analysis required for an answer to [the] question [whether the police had probable cause to arrest without a warrant] is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue." 393 U.S. at 417, 89 S.Ct. at 589.
[2] This outline is reproduced from Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741, 755 (1974).
[3] See discussion in Moylan, supra n. 2 at 761-73.
[4] See Comment, The Informer's Tip as Probable Cause For Search or Arrest, 54 Cornell L.Rev. 958, 966-68 (1969), and Note, Probable Cause and the First-Time Informer, 43 Colo.L. Rev. 357, 362-63 (1972).