ERVIN, Judge.
The state has brought a timely appeal from a non-final order granting defendant’s motion to suppress certain admissions and other statements made while in custody, on the basis that his detention was not justified by probable cause. We disagree with the trial court and hold that the defendant’s detention was lawful, and, accordingly, reverse and remand for proceedings consistent with this opinion.
On August 6, 1980, the Department of Corrections’ (DOC) guards, assisted by deputies of the Columbia County Sheriff’s Office, tracked an escaped prisoner to the area of the Santa Pe River and Interstate 75 at the Columbia County-Alachua County line. The search party heard gunshots ahead of them and thought that the escapee was attempting to swim the river. The DOC officers crossed the river to the Alachua County side in an attempt to pick up the escapee’s tracks. The deputies remained on the Columbia County side of the river. The DOC search party maintained radio contact with their DOC supervisor, Lieutenant God-win, who was located on Interstate 75. One of the guards testified that he thought the Columbia County law enforcement officers were with Godwin when the guards crossed over into Alachua County, however, he was uncertain whether the Columbia County deputies remained with Lieutenant Godwin after that time.
Upon crossing the river, the guards climbed a fence and confronted the appel-lee, Slifer, who had in his possession a shotgun and was accompanied by several dogs. The appellee immediately ordered the guards off his property. They in turn informed him that they were searching for a dangerous escapee and asked him to move aside. The appellee complied, but when he attempted to follow them, the guards asked him to return to the interstate highway, and to remain there until he was escorted to his home by other officers whom they intended to contact by radio. The appellee at first refused this request, but finally cooperated with reluctance.
The DOC search party pursued the trail along the river bank through a heavily wooded area, and eventually came upon a house trailer. At that point they decided they were tracking the wrong person and resolved to cut behind the mobile home and return to the river. While so doing, they discovered a marijuana field growing next to the trailer. Their find caused them to notify their superintendent immediately. The guard making the call later testified that he advised the superintendent “they [the law enforcement officers at the interstate] might better hold him [the appellee] too, because the way the dogs went, and we [the DOC guards] assumed that it was his [the appellee’s] footprints and led right up — we assumed — his [the appellee’s] place.” The appellee was then handcuffed and placed into the back of a Columbia County deputy’s car.
The testimony at the motion hearing did not reveal specifically how, when, where or why the appellee came into the custody of the Columbia County Sheriff’s Department. However, the affidavit in support of the search warrant states that the DOC guards notified the Columbia County Sheriff’s office by portable radio of their findings. The Columbia County Sheriff’s Department next transferred custody of the appellee to the Alachua County Sheriff’s Department, and the Alachua County deputies returned the appellee to his trailer. At that time a number of law enforcement officers were converging around the appellee’s trailer. One officer later testified that the scene was somewhat confusing in that two criminal episodes appeared to be transpiring at the same time.
*61 While in the custody of the Alachua County deputies, outside his trailer, the ap-pellee was provided Miranda warnings, questioned, and admitted his possession or control of the trailer and his ownership of the adjacent property on which the marijuana was found. Those statements were the subject of the suppression hearing. The record also establishes that following the admissions, the Alachua County deputies suspected that the escapee may have been in appellee’s trailer. Therefore, for a short period of time the officers surrounded the trailer and attempted to summon the escapee by using a bull horn. The escapee was not found in the trailer, but was apprehended at a different location several months later.
In finding that the law enforcement officers did not have probable cause, or even an “articulable suspicion” to detain the appel-lee, the court noted that omissions in the record raised the following questions:
(1) Did the corrections officers broadcast a description of the man they saw in the woods to their supervisor and, if so, what was that description?
(2) Did the Defendant match that description?
(3) The .. . interval between [the time] the man [was seen] in the woods and the [time] Defendant [was] taken into custody.
(4) Was the Defendant accompanied by dogs when seen by the Columbia County Sheriff’s deputies?
(5) Was the Defendant carrying a firearm?
(6) What information, if any, and in what manner, was information about the field of cannabis and a man in the woods given to the Columbia County Sheriff’s officers? (The record indicates that the Columbia County Sheriff’s Office did not have direct radio contact with the corrections officers in the woods.)
(7) Who was the Columbia County law enforcement officer that took the Defendant into custody?
(8) For what offense was the Defendant taken into custody? ....
(9)Was the Defendant initially taken into custody by Columbia County Sheriff’s Office or was he taken into custody by some other law enforcement agency and then transferred to their custody?
We consider that what the trial court required from the record goes beyond the minimal standards needed to establish probable cause. The Columbia County deputies had probable cause to arrest the appel-lee based upon the information received by them either directly from the corrections officers or from the DOC supervisor relating to a marijuana field located in an area immediately adjacent to appellee’s trailer. Their information was necessarily based on hearsay; thus the two-pronged test establishing the trustworthiness of hearsay required by Aguilar-Spinelli is applicable. The state must first show the basis of the informant’s knowledge that the drugs were where he said they were. See Aguilar v. Texas, 378 U.S. 108, 114-15, 84 S.Ct. 1509, 1513-14, 12 L.Ed.2d 723 (1964). This prong is easily satisfied. Clearly, the information sprang from the informant’s personal observations of growing marijuana on property where he had a legal right to be at the time of his observations. The state must next show that the informant “was ‘credible’ or his information ‘reliable’.” Id. at 114-115, 84 S.Ct. at 1513-14. Again, the second prong is clearly established by the evidence. The informant was not unknown; he was identified, and as such was available to testify, as he did. The informant, in fact, was an integral part of the investigation; thus the deputies’ corroboration of the information was in fact “ ‘a co-ordinant and intrinsic part of the informer’s operation.’ ” See Barfield v. State, 396 So.2d 793, 797 (Fla. 1st DCA 1981) (quoting from State v. Gamage, 340 A.2d 1, 16 (Me.1975)).
Additionally, the Columbia County officers had probable cause to believe, based on the information which they had received, that the appellee may have been an accomplice to an escape. We base this conclusion on several factors: (1) The DOC officers were lawfully on the appellee’s land because of hot pursuit, cf., State v. Parker, *62 399 So.2d 24 (Fla. 3d DCA 1981); (2) the appellee greeted the DOC officers with a gun and was reluctant to allow the officers on his land, and (3) the DOC officers, with the aid of dogs, followed the trail to the appellee’s mobile home.
The order granting the motion to suppress is reversed and the case is remanded for further consistent proceedings.
McCORD & SHAW, JJ., concur.