413 So.2d 791 (1982)
STATE of Florida, Appellant,
v.
Robert Eugene WILLITS, Appellee.
No. ZZ-91.
District Court of Appeal of Florida, First District.
April 8, 1982.
Rehearing Denied May 19, 1982.
*792 Jim Smith, Atty. Gen., Lawrence A. Kaden, Asst. Atty. Gen., for appellant.
W. Roderick Bowdoin of Darby, Peele, Page & Bowdoin, Lake City, for appellee.
ERVIN, Judge.
The state appeals from an order granting a motion to suppress. Finding that the affidavit in support of the search warrant states probable cause to believe that a crime had been committed, we reverse and remand for further consistent proceedings.
The lower court's order did not express its reasons for suppression, nevertheless, based upon the motion to suppress, and the arguments by counsel, we can only conclude that the court considered that the allegations in the affidavit were insufficient to a determination of either the source's knowledge or the veracity of the information furnished. In our judgment, these asserted deficiencies require a careful examination of the affidavit supporting the search warrant.
The affiant represented that he was a duly designated deputy fire marshal for the State of Florida, charged with the responsibility of investigating fires throughout the state of Florida to determine their cause of origin, and that he was empowered to investigate fraudulent or false claims for insurance proceeds arising from fires. He specifically alleged the following:
On May 21, 1980 a fire occured [sic] in Suwanee [sic], Dixie County, Florida at the residence of Robert Eugene Willits, located adjacent to Leon Drive in the city of Suwanee [sic], in the immediate vicinity of the premises to be searched as more fully described on the face of this Affidavit and Warrant. The subject Robert Eugene Willits has filed, and received, insurance proceeds for property allegedly destroyed in said fire. The Hartford Insurance Company has paid the subject Willits approximately $60,000.00 (sixty thousand dollars) for said loss; included in the payment was payment for the items sought to be seized, as enumerated on the face of this affidavit and warrant. These items were claimed to have been destroyed in the fire at the subjects [sic] residence.
Investigation by your affiant has revealed that those items allegedly destroyed by fire were, in fact, not destroyed *793 and were fraudulently transported and concealed from the residence destroyed by fire on May 21, 1980. Your affiant has taken sworn testimony from Emily Hawks, who is the ex-wife of the subject Willits. Emily Hawks was married to the subject Willits in September of 1979 and lived for a time in the residence which was destroyed by fire on May 21, 1980; Emily Hawks also lived in a trailer directly across Leon Drive from the residence of the subject Willits, when she was not cohabiting with the subject Willits during their marriage. During this interval of time the fire occurred. Emily Hawks has given sworn testimony to your affiant that the items enumerated in this Affidavit and Warrant were located on the premises to be searched at the time of the fire and were not destroyed in the fire. Emily Hawks personally observed those items on the premises to be searched, a houseboat, stored about the houseboat in various areas, only a few days before the fire. Emily Hawks has also personally observed these same items on the premises to be searched after the fire occurred, and within the last three (3) weeks. It is believed that these items are still located on the premises to be searched.
As we have previously observed in Barfield v. State, 396 So.2d 793, 795 (Fla. 1st DCA 1981), the rule of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), requires the allegations in the affidavit to reveal (1) the basis of the informant's knowledge that the items to be seized were where the informant claimed they were, and (2) the veracity of the information provided by the informant. As to the latter requirement, or second prong of Aguilar-Spinelli, the affidavit must disclose either that the informant was credible or that his information was reliable. Aguilar, supra, 378 U.S. at 114-15, 84 S.Ct. at 1513-14. For a more thorough explication of this requirement, see Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741, 757-73 (1974).
We consider first that the state adequately demonstrated the reliability of its information since the facts recited in the affidavit could only have come from one of three sources: (1) the affiant himself, (2) some unnamed employee or agent of Hartford Insurance Company, or (3) Emily Hawks, the former wife of defendant. If the information came directly from the affiant, based upon his own investigation of the reported fire loss, then clearly there is no difficulty in establishing his credibility. The oath of the affiant, as a trustworthiness device, establishes per se the credibility of the affiant's representations and, thereby, the reliability of his directly observed information. "The oath affirms the honesty of the statement and negatives the lie or imagination." Spinelli v. United States, supra, 393 U.S. at 423, 89 S.Ct. at 592 (White, J., concurring). If the information was received from either some unnamed person employed by Hartford, or from Emily Hawks, again no difficulty arises as to the establishment of either source's credibility. Both, in effect, may be considered to have the status of a citizen-informer, in which event "no prior `track record' of the informer's good past performance need be submitted to have [the source's] ... information credited." Barfield v. State, supra, at 796.
The more difficult problem is the basis of the affiant's or his sources' knowledge that the defendant had filed a fraudulent insurance claim, seeking to recover indemnification for losses he had not in fact sustained. That prong is "normally satisfied by an explicit recitation that the [source] had seen certain incriminating facts with his own eyes or heard them with his own ears." Moylan, supra, at 749. And the affidavit usually contains an "affirmative allegation that the affiant [or his informant] spoke with personal knowledge of the matters contained therein; it ... [should] indicate any sources for the complainant's belief; ... ." Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958). A mere conclusion or affirmation *794 of suspicion and belief without any statement of adequate supporting facts is of course inadequate to establish probable cause to search. See Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).
In the instant case, the affidavit recites three basic allegations in support of the search warrant: (1) that the defendant filed a claim with Hartford Insurance Company for the purpose of seeking indemnification for the loss of property destroyed in a fire at his residence; (2) that he in fact received insurance proceeds in the total amount of $60,000 to cover the loss, and (3) that the claim filed for certain items of personal property alleged destroyed was false because, as defendant well knew, they had not been destroyed, but had in fact been removed from defendant's home before the fire and placed in his houseboat, and remained there following the fire.
As to the latter allegation, the source's knowledge of the claim's falsity is easily satisfied since there are explicit recitations in the affidavit revealing that Emily Hawks had seen certain items claimed destroyed in defendant's houseboat both before and following the fire. The first two allegations, relating to the filing of the insurance claim and the receipt by defendant of $60,000 from Hartford as indemnification for the fire loss, are not buttressed by any specific statements as to how the affiant, or his sources, came about this information. In our judgment, however, the failure to recite explicitly the means by which such information was obtained is not fatal to the application for the search warrant.
We must remember the United States Supreme Court's instructions that where the underlying "circumstances of [an affidavit] are detailed, where reason for crediting the source of the information is given, ..., the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner... ." United States v. Ventresca, 380 U.S. 102, 108-09, 85 S.Ct. 741, 745-46, 13 L.Ed.2d 684 (1965). Spinelli did not interdict all information not supported by personal observations  rather that which was not easily verifiable. It looked to the quality of the information supplied in the affidavit. It required that the nature of the information be more substantial than "an off-hand remark heard at a neighborhood bar." 393 U.S. at 417, 89 S.Ct. at 589.
Applying these rules of construction to the first two allegations before us, i.e., that Willits filed a claim for a fire loss, and received indemnification for his loss, we conclude that the very nature of such information is susceptible to simple verification. Obviously, such facts, on their face, are subject to far less difficult corroboration than is the allegation, without more, that the claim filed was fraudulent. It is certainly not unreasonable to assume that Willits' fire loss was well known in the small community where he resided, or that, if he had insurance, he would file a claim for his loss. Such facts, by themselves, bespeak no involvement in criminal activity and may be easily verified. Spinelli itself condones the acceptance of such information if the detail provided in the affidavit is so substantial as to indicate that the affiant or his source spoke from firsthand knowledge, notwithstanding the absence of an explicit recitation that the information is supported by personal observations. Spinelli describes this alternative technique in the following terms:
In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.
393 U.S. at 416, 89 S.Ct. at 589. Spinelli refers to the detail provided by the informant in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), as a "suitable benchmark" for aiding the magistrate's determination "that the informant had gained his information in a reliable way." 393 U.S. at 416-17, 89 S.Ct. at 589-90. *795 The information recited in Draper included a specific physical description of the defendant, the clothes he would wear, the manner in which he would walk, and his anticipated arrival at the Denver train depot from Chicago on one of two specified dates. Id.
The particulars provided in the affidavit before us meet Spinelli's alternative, "selfverifying detail" test. For examples, in addition to facts reciting the filing of the claim of loss and its payment, the affidavit states the date of the fire, its location, and refers to a specific itemization on the face of the search warrant of some of the personal articles claimed to be lost and sought for seizure: two lounge chairs, one black, one green floral; one digital Sears clock radio, one afghan, one Sears table model tape player, one Polaroid camera, one pair field glasses in black case, and one Electrolux canister-type vacuum cleaner. Additionally, the affidavit identifies the former wife of the defendant as having seen those specific items in defendant's houseboat before and after the fire.
The abundance of detail furnished in the affidavit clearly implies that the affiant or his sources came about all of their information in a reliable way. We therefore conclude the lower court erred in suppressing the search warrant.
As to appellee's cross-appeal, urging that the lower court erred in failing to quash the information filed against defendant, we find that we have no jurisdiction to entertain it, and accordingly dismiss it. See Fla. R.App.P. 9.140(b)(1).
The lower court's order granting the motion to suppress is reversed, and the cause is remanded for further proceedings consistent with this opinion.
WENTWORTH and JOANOS, JJ., concur.