425 So.2d 600 (1982)
STATE of Florida, Appellant,
v.
Charles TALBOTT and Steve Jesmer, Appellees.
No. 81-2271.
District Court of Appeal of Florida, Fourth District.
December 29, 1982.
Rehearing Denied February 9, 1983.
*601 Jim Smith, Atty. Gen., Tallahassee, and Trela J. White and Stewart J. Bellus, Asst. Attys. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Richard B. Greene, Asst. Public Defender, West Palm Beach, for appellees.
ANSTEAD, Judge.
This is an appeal by the state from an order suppressing evidence obtained as a result of an alleged illegal arrest. We reverse.
The facts are not in dispute. Joseph Jesmer and Ernest Holland, after being arrested, told police that they had heard Jesmer's brother Steve planning a bank robbery. The robbery was to occur within the week in Palm Beach County at a bank on Military Trail between Hypoluxo Road and Purdy Lane. Steve and a friend, Charles Talbott, were to use a pistol, wear ski masks, escape in a black Mustang and leave the state immediately thereafter. The Palm Beach County Sheriff's Department immediately sent this information to banks in the target area. One week later, no bank having been robbed, the police again questioned Joseph Jesmer, who had subsequently been released. He told them that the black Mustang was under repair and that he did not know if the robbery was still under consideration.
Approximately three weeks after the original tip, a teller at a bank in the target area reported a robbery similar in detail to the one anticipated by the police. Later that day, detectives stopped the black Mustang and took Jesmer and Talbott into custody. Jesmer and Talbott then confessed to unrelated crimes while denying their involvement in the bank robbery. In fact, it turned out that the bank had not been robbed. Rather, the teller had embezzled the funds and concocted the robbery story based on the information concerning the anticipated robbery by Jesmer and Talbott circulated earlier by the Sheriff's Department. The trial court suppressed the confessions on the grounds that the police did not have probable cause to arrest Jesmer and Talbott. The trial court was particularly concerned with the police officer's reliance on the information provided by Joseph Jesmer and Ernest Holland.
A police officer may arrest a suspect without a warrant outside the suspect's home if the officer has probable cause to believe the suspect has committed a felony. An informant's tip may provide probable cause if it satisfies a two part test. The tip must reveal the basis for the informant's knowledge and it must be sufficiently truthful. The veracity may be proven by the informant's credibility or the intrinsic reliability of the information he provides. Barfield v. State, 396 So.2d 793 (Fla. 1st DCA 1981); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
The basis-of-knowledge part of the test is satisfied if the information is based on personal observation or if it is received from reliable and credible third parties. Barfield, at 795. In this case, the information provided by Joseph Jesmer and Ernest Holland was based upon an overheard conversation. Such a basis is equivalent to *602 personal observation. Thus, the state satisfied this part of the test.
To satisfy the veracity part of the test, the state must show the informant's credibility or the information's reliability. In this case, for instance, it appears that the state failed to establish the credibility of the informants to the extent necessary to rely on that tip alone for making an arrest.[1]
Importantly, however, information may also be proven reliable if, when considered along with a police officer's corroboration of the information by independent investigations, it may be judged to be "as trustworthy as a tip which would pass Aguilar's test without independent corroboration." Spinelli, at 415, 89 S.Ct. at 588. In other words, if there is reliable independent evidence available to the police that supports the tip, that evidence itself may be sufficient to establish the reliability of the tip. For such corroboration by independent investigation to be sufficient, it does not have to supply probable cause itself, but it must at least be "unusual in inviting explanation." LaFave, Probable Cause From Informants: The Effects of Murphy's Law on Fourth Amendment Adjudication, 1977 U. of Ill.L.Forum 1,55 quoted in Barfield, at 797.[2]
In our view, the reliability of the information provided by the informants was sufficiently established here when the police received an independent report of a bank robbery, the description of which fit almost exactly the earlier report of the informants. Indeed, as noted, the bank teller involved tailored her report to fit the information provided in the earlier warning circulated by the police. When the robbery actually took place as reported, albeit at a later time, we believe this event constituted independent corroboration of the earlier tip sufficient to furnish the officers with probable cause to arrest the appellees, who at this point were no longer just persons named as potential robbers but now were persons who fit the descriptions of actual robbers given by the bank teller. We realize that the police could have chosen to have further investigated the robbery and the appellees' involvement therein prior to making any arrests. Indeed, it was the very next day after the robbery that the bank teller confessed. Clearly, after that confession no cause would have existed to arrest the appellees. However, at the time the crime was reported the police had no reason to believe the report was not truthful and, given the similarity in detail of the robbery anticipated to the robbery that was reported, *603 coupled with the earlier report that the robbers were going to immediately flee the state, we do not believe the actions of the police were unreasonable.
Accordingly, for the reasons set out above, we reverse the decision of the trial court and remand for further proceedings consistent herewith.
BERANEK and HURLEY, JJ., concur.
NOTES
[1] The credibility of an informant may be based on past performance. Informers who have provided information in the past that has proven to be correct are considered credible. Here Jesmer was a first-time informer. Thus, the state has not proved his credibility in this manner. Information may also be deemed reliable if it is against the informant's penal interest or if the information concerns someone known to the police as having a reputation for illegal activity. Barfield, at 796. Neither of these criteria is directly involved in this case. Information provided by citizen-informers is also deemed reliable. A citizen-informer is one who is "motivated not by pecuniary gain, but by the desire to further justice." Barfield, at 796. Here, although Joseph was not being paid, it can perhaps be inferred that since he had just been arrested he may have had a strong incentive to inform in order to ease his own legal troubles. Hence, Joseph was hardly a "citizen informer." On the other hand it is obvious that the informants here were much more than "anonymous tipsters" whose reliability is inherently suspect. Both Joseph and Holland were identifiable and one was the brother of the alleged robber-to-be. These factors support their reliability. If we were limited to a consideration of the informants' credibility we would no doubt uphold the suppression order.
[2] The state also claims that the reliability of the tip may be established on the sufficiency-of-detail theory first stated in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In Draper, an informant who had provided accurate information in the past provided a tip without revealing his basis for that knowledge. The Supreme Court held that the basis-of-knowledge prong of the test could be satisfied if the tip were sufficiently detailed. The second prong, the veracity test, was satisfied by the informant's past history of accurateness. The court did not use the sufficiency-of-detail theory to satisfy the veracity prong. The use of Draper, in Florida courts, has been limited to satisfying the basis-of-knowledge test but not the veracity test. See State v. Willits, 413 So.2d 791 (Fla. 1st DCA 1982); State v. Doherty, 240 So.2d 332 (Fla. 4th DCA 1970).