WIGGINTON, Judge.
The State appeals the trial court’s orders granting appellee’s motions to suppress certain statements and to dismiss the charge against appellee of trafficking in cannabis in excess of 100 pounds but less than 2,000 pounds, in violation of section 893.135(l)(a)l, Florida Statutes. We affirm.
On August 6, 1980, Florida Department of Corrections guards, assisted by Columbia County Sheriff’s deputies, tracked an escaped prisoner to an area of the Santa Fe River and Interstate 75. Upon hearing gunshots, the officers crossed the river, climbed a fence and confronted appellee, who was in possession of a shotgun and accompanied by several dogs. Appellee ordered the officers off his property. However, when they informed him that they were searching for a dangerous escapee, he finally cooperated with them by proceeding toward the interstate, as they requested, to be escorted home by other officers who were to be contacted by radio. The search party pursued the trail along the river bank through a heavily wooded area for one-fourth to one-half mile and came upon a mobile home. Near the trailer, the officers discovered a growing marijuana field. The evidence showed that dense foliage covered the land around the mobile home; paths led from the mobile home to two or three wooden structures located behind the trailer, which were visible from the trailer and which contained implements used in the growing and cultivation of marijuana; trail's led from the structures into the marijuana field, which was not visible from the trailer. The officers who discovered the marijuana field radioed the officers waiting at the interstate, told them about the field and advised that they should detain appel-lee. When appellee met the officers at the interstate, they took him into custody, gave him his Miranda warnings, handcuffed him and put him in the caged back seat of a sheriff’s car. After receiving his warnings, appellee remained silent during his detention until he was transferred to the car of Lt. Nobles to be driven to the mobile home.
According to Nobles’ testimony at the motion hearing, he released appellee from the handcuffs and invited him to sit in the front seat of his car. Nobles said that he did not advise appellee of his Miranda rights, but he thought he asked appellee if he previously had been advised of his rights, to which appellee replied in the affirmative. During the drive to the mobile home, Nobles told appellee that marijuana had been spotted “somewhere possibly on your property or probably on your property and that’s not my concern right now.” He went on to explain to appellee that a prisoner possibly was hiding in the mobile home and he expressed concern for the safety of anyone who might be in or around the mobile home. He asked appellee if he would cooperate with the officers at the mobile home in their effort to determine the location of the escapee. At that point, for the first time since receiving his Miranda warnings, appellee began to talk. He told Lt. Nobles that he had a roommate named Frank who might be at the mobile home. In response to other questions by Nobles, he stated that he and Frank lived in the mobile home, which they rented along with the surrounding 100 acres. Those statements are the subject of the motion to suppress.
Soon after appellee and Lt. Nobles reached the mobile home, the officers determined that the escapee was not there. They then arrested appellee for possession of marijuana and appellee made no further statements.
In granting appellee’s motion to suppress his statements, the trial judge agreed with *435 appellee’s argument that under the peculiar circumstances of this case, the statements were not made subject to a knowing and voluntary waiver on the part of appel-lee of his right to remain silent.[1]
We agree with the trial judge that under the particular facts of this case, ap-pellee’s right to remain silent was not knowingly and voluntarily waived and therefore his statements were properly suppressed. In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the court stated:
If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. (Emphasis supplied).
In Foreman v. State, 400 So.2d 1047 (Fla. 1st DCA 1981), the court, in considering the voluntariness of a confession, declared:
The confession must be excluded if “the attending circumstances, or the declarations of those present at the making of the confession, are calculated to delude the prisoner as to his true position, or to exert improper or undue influence over his mind.” Frazier v. State, 107 So.2d 16 (Fla.1958).
In Lornitis v. State, 394 So.2d 455 (Fla. 1st DCA 1981), the Lornitis brothers were arrested for possession of marijuana and advised of their Miranda rights. The brothers were asked to sign the “acknowledgment and waiver of rights” form, which they refused to do. A deputy then instructed each of them to identify any personal belongings in the cargo area of the truck which they were driving at the time of their arrest and in which the marijuana was located. According to the testimony, the deputy told the men that any belongings not claimed would be “disposed of.” In order to avoid having their bags thrown away, the men identified their luggage in the midst of the marijuana bales located in the cargo area of the truck. That identification was the subject of the suppression. In affirming the suppression, this Court found that under the facts of that case, the defendants’ refusal to sign the waiver form did indicate “in any manner” to the deputy that they desired to remain silent and thus interrogation should have ceased. The court rejected the State’s argument that by freely and voluntarily complying with the deputies’ instruction to identify their belongings, the defendants thereby waived their right of interrogation free silence, on the basis that such a view
exploits the suspects’ failure to recognize, for what it was, the subtle form of interrogation to which they were subjected. The suspects conceived, as reasonably they might considering that Deputy Jones apparently acquiesced in their refusal to be questioned, either that complying with his instructions had no evi-dentiary significance or that complying, being administratively necessary (in the opinion of an officer who evidently respected their election not to talk), was for that reason privileged against use as evidence.
At 459.
The court thereupon concluded that the defendants' response to Deputy Jones’ instruction could not have constituted a knowing and intelligent waiver of their right, reserved moments before, not to be interrogated.
Although the question of whether Lt. Nobles knew and intended that his discus *436 sion with appellee would operate as an “interrogation” designed to elicit incriminating responses from appellee is open to fair debate, Lt.-Nobles, under the circumstances, must be charged with the responsibility of having known that his questioning would produce an incriminating response from this defendant who had theretofore remained silent, but who, it may be reasoned, was cooperating in a humanitarian manner to save his friend in this emergency situation. Lt. Nobles’ discussion with appellee amounted to an “interrogation” under Miranda and it probably deluded appellee as to his true position. Compare Foreman, Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) and Lornitis. For the reasons discussed in Lornitis, that interrogation was not done pursuant to a knowing and voluntary waiver by appellant of his right to remain silent. Thus, we hold that the trial judge’s suppression of appellee’s statement was correct.
The State’s second point concerns the question of whether the trial court was correct in granting appellee’s motion to dismiss, which was filed pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). The rule 3.190(c)(4) motion is appropriate only in the unique situation in which no material disputed facts exist. The facts alleged in appellee’s motion and the State’s traverse thereto allege the facts to be basically as set forth above. Appellee stipulated to the facts set forth by the State in its traverse.[2] In the absence of the evidence provided by the statements of appellee which were correctly suppressed by the trial judge, the only remaining evidence to support the State’s case is that appellee was seen along the Santa Fe River with a shotgun and dogs one-fourth to one-half mile from the marijuana patch. That evidence standing alone is insufficient, as a matter of law, to survive a 3.190(c)(4) motion to dismiss. Therefore, the trial judge was correct in granting the motion.
AFFIRMED.
SMITH, J., concurs.
NIMMONS, J., concurs in part and dissents in part, with written opinion.

. This Court has previously reversed an order of Judge Chance, which suppressed the same statements made by appellee that are involved in this appeal on the basis that appellee’s detention was not justified by probable cause. This Court held that appellee’s detention was lawful. State v. Slifer, 413 So.2d 59 (Fla. 1st DCA 1982).

.In its traverse, the State asserted only the following additional facts:
1. Structures were located behind the mobile home in which the Defendant admitted residing.
2. A well traveled path ran from the mobile home to the structure described in Paragraph 1 above.
3. The structures could be seen from the mobile home.
4. The cannabis seized in this case was located behind the structures and could be seen from the area of the structures. Paths lead from the structures into the cannabis.
5. The structures contained cultivation implements, drying racks, fertilizer, and a plant shredder.
6. No other residences were in the immediate area of the mobile home, structures, or the seized cannabis.
The State asserted that these facts plus those asserted in appellee's motion were sufficient as a matter of law to constitute a prima facie case against appellee.