512 So.2d 1006 (1987)
Sterling Albert MURPHY, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-2317.
District Court of Appeal of Florida, Fourth District.
August 26, 1987.
Rehearing Denied October 7, 1987.
Richard L. Jorandby, Public Defender, and Thomas F. Ball, III, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, for appellee.
STONE, Judge.
The defendant entered a no contest plea to charges of possession of cocaine and drug paraphernalia, reserving the opportunity to appeal the denial of his motion to suppress. The defendant consented to a search of his vehicle, where the evidence he sought to suppress was found.
*1007 The trial court made the following findings:
THE COURT: I will read into the record briefly the facts from the evidence. The evidence is composed of the testimony of three witnesses. The Court in making the findings of fact does have to make some determinations of credibility and weight to be given to the testimony. I have observed the three witnesses while testifying, have considered those factors which are legally required to be considered in making determinations of weight and credibility. Based upon the evidence then I make the following findings of fact. On April 2, 1986, while on patrol at approximately one ten a.m. Officer Miller of City of Okeechobee Police Department saw a 1978 Buick Riviera automobile parked in front of the Two Stop Bar in the City of Okeechobee, which is an area which is known for drug dealing. Drug sales, illicit drug sales. The Two Stop Bar was closed at that time. Officer Miller is an officer of some five years of experience as a police officer. He has had experience as an undercover officer buying illicit drugs; he has engaged in some twenty drug buys and arrests therefrom. The Buick Riviera was parked legally in front of the Two Stop Bar. Officer Miller observed no other vehicles in the area although there may have bene [sic] other vehicles in the area. He noted that the Riviera was a car which was not necessarily consistent with the socio-economics of the area, in his opinion was a nicer car than was normally seen in that area. As he drove near he did notice a person described as a black male wearing a red raincoat, in his words hanging in the window of the Buick. Officer Miller drove in the direction of the black male who was wearing the red raincoat who first walked away from him then started running, ran into the woods which were nearby as Officer Miller followed in his car so Officer Miller turned around and returned to the Buick automobile. Went to the window of the Buick and observed the Defendant in this case who appeared to be shaking, appeared to be nervous, asked for the Defendant's driver's license, which Mr. Murphy did give him; Mr.  Officer Miller then went back to his patrol unit and checked Mr. Murphy's driver's license. Approximately at this time Officer Emmins arrived pursuant to a call that Officer Miller had made when he exited his car to talk with the Defendant. Mr. Miller told Mr. Emmins that he suspected mr. [sic] Murphy of being involved in some type of drug related offense; stated that he wanted to look in Mr. Murphy's car because of the circumstances that he had observed and he outlined those circumstances to Officer Emmins; Officer Emmins is an officer of some 3 1/2 years experience as a police officer involved in between 40  50 arrests for cocaine violations. Officer Emmins then asked Mr. Murphy if it was all right to search Mr. Murphy's car; Mr. Murphy immediately responded yes. officer [sic] Emmins sensing that the answer was too quick advised Mr. Murphy that he did not have to consent to the search; however, Mr. Murphy said yes he did want to go ahead and allow the search. Mr. Miller then told Mr. Murphy that he suspected that Mr. Murphy had been buying or selling cocaine. The two officers then did search the automobile. During the course of the search items of contraband were found concealed in the car. Cocaine rocks and cocaine heaters. Based thereon Mr. Murphy was arrested. Later the substance was field tested and field tested positive for cocaine. On other occasions Officer Emmins has watched persons who are suspected of drug deals run into these same woods and drop the cocaine in the woods on their way running through the woods. Based upon these facts there are basically three legal questions the Court must answer. First, the propriety of the stop of Mr. Murphy, that is, was the stop within the stop and frisk law, Florida Section 901.151 and Terry vs. Ohio. The components of that first was there articulable and founded suspicion that would justify the stop. Based upon the totality of the circumstances I find yes. it [sic] was a stop within the scope of Terry vs. *1008 Ohio and it was yes to that. There was a legal right to stop the Defendant under the provisions of 901.151 and Terry vs. Ohio. Was there a consent to search the vehicle? Yes. Was there probable cause to arrest the Defendant? Yes.
The Motion to Suppress Tangible Exhibits is denied.
The trial court did not err in concluding that Murphy was lawfully detained. Cf. Tamer v. State, 484 So.2d 583 (Fla. 1986); State v. Kehoe, 498 So.2d 560 (Fla. 4th DCA 1986); Berry v. State, 493 So.2d 1098 (Fla. 4th DCA 1986); State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978); State v. Smith, 477 So.2d 658 (Fla. 5th DCA 1985); State v. Bell, 382 So.2d 119 (Fla. 3d DCA 1980). There is no conflict with Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980), because the totality of the circumstances differs in the instant case. Moreover, the evidence supports the trial court's conclusion that Murphy voluntarily consented to the search in question. United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Denehy v. State, 400 So.2d 1216 (Fla. 1980). See also United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Unlike the defendant in Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the defendant in this case was not being unlawfully detained at the time of the disputed consent. We therefore affirm.
LETTS and GLICKSTEIN, JJ., concur.