SHARP, Judge
dissenting:
I respectfully dissent. Somewhere along the chain of events leading to Brewer’s arrest and search, the police officers no longer had any valid purpose nor reasonable suspicion to hold Brewer and his companion, Riley. Therefore, Brewer’s motion to suppress evidence obtained as a result of their illegal detention and search should have been granted pursuant to Florida’s Stop and Frisk Law. § 901.151, Fla.Stat. (1983). I cannot say exactly when the officers surpassed their lawful detention powers in this case, but a review of the facts demonstrates their powers were considerably exceeded here.
The record reveals that on November 18, 1984, Brewer was a passenger in Riley’s van. Sometime before 4:00 a.m., Riley’s van overheated. He parked it in a remote, unpopulated area along Highway 44, twenty feet off the pavement at the edge of an orange grove. While working on the engine, Riley cut his finger.
Weavil and Kumm, two reserve part-time deputy sheriffs, saw the van as they were driving a prisoner transport vehicle east on Highway 44. Weavil noted a driver and passenger sitting in the van. The deputies stopped to render assistance.
Riley testified that his van overheated because it had no water or oil. When the *1383 reserve deputies arrived, he had just restarted the engine. Deputy Weavil left his vehicle and went over to the van.
Weavil became nervous and suspicious because Riley’s hands were out of sight. He told Riley to put them up on the wheel. There was a tissue around Riley’s right hand and it showed signs of fresh blood. Weavil’s view into the rear of Riley’s van was obstructed by a hanging blanket.
Riley explained the van overheated and he had cut his hand coping with the engine. Weavil could detect no odor or heat from the engine. He ordered Riley out of the van and asked him to produce a driver’s license and automobile registration. Riley showed Weavil his driver’s license. Weavil could not remember whether the registration was produced, but there was apparently no problem with the tag.
At about this point, Deputy Kumm approached the passenger side of the van and got Brewer out. Brewer and Riley were moved towards the rear of the van. Deputy Weavil asked permission to search the van, but Riley declined. Riley told the deputies that no one else was in the van. Kumm called out and asked any other individuals in the van to exit. There was no response.
After Riley denied permission for the reserve deputies to search the van, Kumm walked around the van and tried to see inside. Finally, Kumm reached into the window “real fast” and pushed the blanket back. Contained in the interior portion of the van was an upside down safe. Riley was asked whose safe it was, and he responded it was his. The deputies had no reason to disbelieve him. No police reports of stolen safes had been made to local authorities.
Weavil and Kumm then handcuffed Brewer and Riley and placed them in the transport vehicle. Neither was personally searched. Weavil called for a regular zone deputy who arrived 20-25 minutes later.
The regular zone deputy, Stewart, read Riley his Miranda[1] rights, and asked permission to look inside the van. Testimony was conflicting as to whether Riley agreed. Stewart looked into the van and found two marijuana roaches in an ashtray between the driver and passenger seats. Riley and Brewer were arrested for possession of under twenty grams of marijuana.
The day after the arrests, it was reported that a safe had been stolen in DeLand. The police obtained a search warrant for the van which had been impounded at the time of the arrests. Brewer was subsequently charged with grand theft.
The Stop and Frisk Law gives law enforcement officers the right to temporarily detain a person to ascertain his identity and information concerning his presence at a place where circumstances indicate the person “has committed, is committing, or is about to commit a violation of the criminal laws of this state.” § 901.151(2), Fla.Stat. (1983). No person shall be temporarily detained longer than is reasonably necessary to make such a determination. § 901.151(3), Fla.Stat. (1983); Tennyson v. State, 469 So.2d 133 (Fla. 5th DCA 1985). If the officer has probable cause to believe the person is armed with a dangerous weapon, he may search such person, but only to the extent necessary, and for the purpose of, disclosing the weapon. § 901.151(5), Fla.Stat. (1983); Johnson v. State, 537 So.2d 117 (Fla. 1st DCA 1988). Only evidence seized in accordance with this section is admissible. § 901.151(6), Fla.Stat. (1983).
To justify a temporary stop under the Stop and Frisk Law, probable cause is not required. However, a founded suspicion is necessary. State v. Perera, 412 So.2d 867 (Fla. 2d DCA), rev. denied, 419 So.2d 1199 (Fla.1982). A bare suspicion cannot support a temporary detention. Kearse v. State, 384 So.2d 272 (Fla. 4th DCA 1980). A mere (or bare) suspicion has no objective justification and is no better than random selection, sheer guesswork, or a hunch. Lacks v. State, 366 So.2d 1223 (Fla. 4th DCA 1979); State v. Stevens, 354 So.2d *1384 1244 (Fla. 4th DCA 1978). An officer’s curiosity is not sufficient. Romanello v. State, 365 So.2d 220 (Fla. 4th DCA 1978). Factors to be considered in determining whether a founded suspicion exists are: the time, day of week, location, physical appearance of suspect, behavior of suspect, appearance and manner of operation of any vehicle involved, and anything incongruous or unusual in the situation as interpreted in light of the officer’s knowledge. Hooper v. State, 440 So.2d 525 (Fla. 1st DCA 1983); State v. Spurting, 385 So.2d 672 (Fla. 2d DCA), rev. denied, 392 So.2d 1379 (Fla.1980).
Accepting the evidence and the reasonable inferences derived therefrom in a light most favorable to the state, as we are required to do,[2] it does not appear to me that Weavil and Kumm possessed a founded suspicion that Brewer and Riley were committing, had committed, or were about to commit a criminal offense. Spence v. State, 525 So.2d 442 (Fla. 5th DCA 1988); G.J.P. v. State, 469 So.2d 826 (Fla. 2d DCA 1985); State v. Rizo, 463 So.2d 1165 (Fla. 3d DCA 1984). They initially stopped because they thought the van had broken down and the occupants were in need of assistance. The only factual basis cited for their subsequent suspicions of criminal activity was (1) the van’s engine did not feel hot, nor did it “smell” like an engine that had overheated; (2) Riley had a fresh cut on his hand which appeared to have occurred more recently than the overheat problem; (3) minor discrepancies in the length of time Brewer and Riley said the van had broken down; and (4) Brewer’s fidgety body movements.
After the deputies obtained Riley’s identification and an explanation- regarding his and Brewer’s presence in the van, they had no reason to detain them. Riley’s explanation was plausible, as even the deputies acknowledged. § 901.151(3), Fla.Stat. (1983); Tennyson. Weavil testified he was concerned for the safety of people in the area, and his own personal safety. However, the van was in a remote agricultural area, and Weavil testified neither deputy suspected Brewer or Riley were carrying weapons. Neither one was searched. If such an allegation had been made, a search of the men would have been proper. However, even then it is questionable whether the initial search of the van would have been authorized because both men were outside the van and were not capable of reaching into the interior of the van to obtain a weapon.[3]
Kumm testified that he looked into the back of the van because he had “an uneasy feeling” and was concerned for his and his partner’s safety. He was worried “about anything, just anything, anybody or anything that was in there, because of again the responses from both individuals.” The responses which frightened Kumm were a discrepancy between Riley’s and Brewer’s answers as to the length of time the van had been parked on the side of the road, and their nervous body movements.
At some point such vague suspicions and fears cease to justify detention of suspects under Florida’s Stop and Frisk Law. § 901.151, Fla.Stat. (1983). When that point was reached in this case is perhaps debatable. Clearly it had been reached and passed by the time Kumm searched the van and found the safe, and it had long been passed before the regular deputy found the marijuana. Once a driver produces a license and registration, mere nervousness on his or his passenger’s part does not justify further detention and search of a vehicle. See Murphy v. State, 512 So.2d 1006 (Fla. 4th DCA 1987), rev. denied, 520 So.2d 585 (Fla.1988). Any evidence obtained as a result of a search under such *1385 circumstances cannot serve as the basis for a legal search or arrest.
A similar case arose in Spence. There, a police officer on patrol pulled into an area where people do drugs. The area was also a “lover’s lane.” The officer’s vehicle’s headlights came “head to head” with that of another vehicle which was parked and had its interior lights on. There were two couples in the vehicle, and the right front and left rear passengers leaned down as if to put something on the floorboard. The officer made the occupants get out of the vehicle and he then could see a box on top of which was a razor blade, two plastic packets of white powdery substance and a short plastic straw.
All four persons in the ear were arrested. The trial court denied a motion to suppress evidence seized from the car. This court reversed, stating:
The trooper did not testify that he had any concern for his safety upon approaching the vehicle. His intent was simply to see what, if anything, the occupants were hiding under the seat. This was mere curiosity not based on any articulable facts, (emphasis added)
Id. at 443.
This court also stated there was nothing about the circumstances which would have provided the founded suspicion required under the stop and frisk law to detain the occupants for further investigation. The detention was based on a brief observation of conduct which is at least equally consistent with noncriminal activity. Id.
Likewise, the facts of this case reveal nothing which would have provided a founded suspicion under the Stop and Frisk Law to detain Brewer and Riley beyond the initial inquiry as to need for assistance, and at most a check of Riley’s license and registration. The deputies’ continued “nervousness” was not logically related to any factual circumstances. Brewer and Riley’s conduct was at least equally consistent with noncriminal activity, and the initial stop of the deputies was based on a desire to aid, not to investigate with any suspicion of criminal activity. Carrying the logic of this case to its extreme, any occupied vehicle disabled on a highway in a remote area after midnight is subject to search and seizure, without any further justification. I would reverse.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. McNamara v. State, 357 So.2d 410 (Fla.1978); In re Forfeiture of $62,200 in U.S. Currency, 531 So.2d 352 (Fla. 1st DCA 1988).

. See, however, Mitchell v. State, 522 So.2d 1003 (Fla. 4th DCA 1988) (where officer made valid traffic stop and saw driver place something in console area by driver’s seat, it was proper for officer to look in console even after driver exited vehicle because, if weapon had been placed in console, driver would have access to it upon reentry).