597 So.2d 916 (1992)
Melvin Jeffrey ELLIOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2180.
District Court of Appeal of Florida, Fourth District.
April 22, 1992.
Thomas C. Gano of Lubin and Gano, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Jacqueline Barakat and Michelle Smith, Asst. Attys. Gen., West Palm Beach, for appellee.
WARNER, Judge.
Appellant challenges his conviction on the ground that the trial court erred in denying the motion to suppress cocaine found on appellant's person. The issue presented is whether the police officer had probable cause to arrest appellant which would have justified the ensuing search. On these facts, we affirm the trial court. The appellant also challenges his sentence, and the state concedes error which requires a new sentencing proceeding.
On the morning of October 30, 1990, at about 10:20 a.m., Detective Fraser of the West Palm Beach police was returning to the police station. He was passing a corner which he described as the most heavily-trafficked area in regards to crack cocaine in the south end of the city. The detective had been involved in numerous drug arrests at that location in the past. As he passed he saw appellant leaning into a passenger vehicle. Detective Fraser was a seventeen year veteran of the force and during that time had conducted hundreds of drug investigations. The detective noticed a black man leaning into a car occupied by a white male which in itself was unusual at this location except in connection with drug activity.[1] The detective saw some movement, which the detective described as an exchange of hands, between the passenger and the appellant. At that point the detective thought that a drug transaction had occurred. He threw his car into park and exited the vehicle. As soon as he did, the individual driving the car left the area in a hurry. When appellant turned, the detective recognized him because he had seized a quantity of cocaine from appellant only two weeks previously. As appellant turned he made a very, very quick motion with his hand to place a plastic baggie into his pocket. Based upon all *917 of these circumstances the detective stated that he was absolutely sure that a drug transaction had occurred although he admitted that he did not actually see the contents of the baggie. The detective said, "Don't run, Jeff." He then grabbed appellant by his pants and placed him in the patrol car where he patted him down and removed the plastic baggie from his pocket. The baggie contained a quantity of cocaine. The detective testified that plastic baggies are commonly used to package crack cocaine.
This case is remarkably similar to State v. Casey, 528 So.2d 1264 (Fla. 1st DCA 1988). In that case an officer came upon a group including the defendant, whom he knew, in a known drug area. As the officer approached, defendant's two companions fled and the defendant, acting very startled tried quickly to shove a plastic baggie in his pocket. The officer could see part of the baggie but could not see its contents. The officer stopped the defendant and seized the baggie. The First District concluded that under the totality of the circumstances, the officer had sufficient probable cause to seize the baggie, noting that even an innocuous item in plain view can be seized if additional circumstances are present which provide sufficient probable cause to believe that it contains contraband, citing State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984).
The appellant cites to the court numerous cases in which this and other courts have held that under the circumstances present in those cases, an officer had only bare suspicion of criminal activity. For instance, in Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990), the court held that an officer who observed a pedestrian in a known drug area approach an automobile where the occupant extends his open hand, palm up toward the pedestrian but did not see anything pass between the two had only a bare suspicion of criminal activity insufficient to justify even a temporary detention. In Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988), the following actions were deemed insufficient to raise a founded suspicion: (1) appellant's presence in a high crime area; (2) appellant's companion was a known drug dealer; (3) appellant was walking, but not away from the officers; and (4) appellant's fists were clenched in a non-threatening manner. In a case from our court not cited by appellant, we held in King v. State, 521 So.2d 334 (Fla. 4th DCA 1988), that the following facts did not give rise to founded suspicion: (1) the site was a high crime area; (2) the automobile containing the white defendant was parked between two known drug houses; (3) a known drug dealer who was black and a Mexican male were standing beside the car; and (4) the drug dealer walked away quickly as the officer approached. Our court noted that without more, such as the observation of something changing hands, no founded suspicion existed.
These three cases are merely examples of the myriad of cases concerning the validity of stops.[2] Each of these found the facts insufficient to justify a founded suspicion of criminal activity, whereas in this case we are dealing with whether or not probable cause exists to arrest, presumably requiring a higher degree of proof. The courts' efforts to explain the two terms are not sufficiently clear. In G.J.P. v. State, 469 So.2d 826, 827 (Fla. 2d DCA 1985) the court defined "founded suspicion":
To justify temporary detention of a person, there must be a `founded' suspicion in the mind of the police officer that the person has committed, is committing, or is about to commit a crime. [Citations omitted]. A `founded' suspicion is one which has some factual foundation in the circumstances observed by the officer when those circumstances are interpreted in light of the officer's knowledge. [Citations omitted]. Mere suspicion, on the other hand, is no better than random selection, sheer guesswork, or hunch; it has no objective justification.
*918 The definition of probable cause is not markedly different. In State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984), the court stated:
The test to determine the existence of such probable cause is whether `the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been [or is being] committed.' Benefield v. State, 160 So.2d 706 (Fla. 1964) [remaining citations omitted]. `The facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which a conviction must be based.' ... In essence, then, the totality of the circumstances, i.e., the whole picture, must be taken into account.
Id. at 427-28.
Both the founded suspicion standard and the probable cause standard require the officer to interpret a factual foundation in light of the officer's knowledge and experience. The difference between the two lies in the degree of probability which must be found to exist in order to find probable cause to arrest. In 1 LaFave, Search and Seizure § 3.2(e), at 594-595 (2d ed. 1987), the issue is addressed:
[with respect to situations where the officer observes suspicious-looking conduct], there is a fair amount of judicial language to be found which is directed to the question of how probable it must appear that criminal conduct is occurring... . It is commonly said [in judicial opinions] that `an arrest and search based on events as consistent with innocent as with criminal activity are unlawful,' so that if the observed pattern of events `occurs just as frequently or even more than frequently in innocent transactions, the pattern is too equivocal to form the basis for such a warrantless arrest.' The mere fact that `innocent explanations for the activity may be imagined' is not enough to defeat the probable cause showing, and there is probable cause if a `succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one.'
Thus, it may be said that where the totality of the circumstances more likely than not points to the commission of a crime, probable cause to arrest and search exists.
In the instant case, given the experience of the officer at the very location in question and with the recent experience with the appellant in question, what he observed we think established a course of conduct which was substantially more likely than not to be criminal activity rather than an innocent event. Certainly the officer had no doubt that he was witnessing a drug transaction. In view of all of the evidence the trial court was correct in concluding that there was probable cause to arrest and search the appellant. We therefore affirm his conviction.
The trial court sentenced appellant as an habitual offender. However, he did not make all of the necessary findings on the record, and because of this we reverse for a new sentencing proceeding. See Walker v. State, 462 So.2d 452 (Fla. 1985); Rolle v. State, 586 So.2d 1293 (Fla. 4th DCA 1991). On remand the trial court may resentence Appellant as a habitual offender if the required statutory findings are made and supported by the evidence. Meehan v. State, 526 So.2d 1083 (Fla. 4th DCA 1988).
AFFIRMED AS TO CONVICTION; REVERSED AS TO SENTENCE AND REMANDED FOR FURTHER PROCEEDINGS THEREON.
STONE, J., concurs.
HERSEY, J., concurs in conclusion only.
NOTES
[1] We regret the necessity of mentioning the race of the suspects. However, it is a fact in the record which drew the detective's attention to the activity. As we have noted in other cases, it alone does not raise founded suspicion.
[2] See also State v. Isaacs, 578 So.2d 523 (Fla. 4th DCA 1991); State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988); Ewen v. State, 518 So.2d 1285 (Fla. 4th DCA 1987), rev. denied, 528 So.2d 1181 (Fla. 1988); Murphy v. State, 512 So.2d 1006 (Fla. 4th DCA 1987), rev. denied, 520 So.2d 585 (Fla. 1988).