616 So.2d 124 (1993)
STATE of Florida, Appellant,
v.
Perry Anthony BROWN, Appellee.
No. 92-01263.
District Court of Appeal of Florida, Second District.
March 24, 1993.
*125 Robert A. Butterworth, Atty. Gen., Tallahassee, and Erica M. Raffel, Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Timothy J. Ferreri, Asst. Public Defender, Bartow, for appellee.
DANAHY, Acting Chief Judge.
The state appeals an order of the circuit court suppressing cocaine as evidence against the appellee, Perry Anthony Brown. The circuit court based its suppression order on a finding that the police had no founded suspicion to make a stop of Brown. We disagree with the circuit court and find that there was founded suspicion to stop Brown after which events escalated and furnished probable cause to support the subsequent arrest. Accordingly, we reverse the order of suppression.
The testimony at the hearing on the motion to suppress adduced the following evidence. Several police officers, on patrol, drove into an area known for drug trafficking. They saw several known drug dealers congregated there. Officer Ambrosia exited his vehicle and began walking toward a particular individual whom he knew to be a drug dealer (not Brown). Brown left the crowd congregated in the area and, in the officer's words, "almost running up" to him, handed the officer his driver's license saying "Here's my driver's license, sir." Officer Ambrosia, although acquainted with Brown from prior contacts, was not walking over to him, did not call him over, and did not otherwise initiate the encounter. The officer testified that he did not know why Brown was offering him his driver's license and found his actions rather odd.
The officer further testified that after Brown handed him his license, he began to act "real jumpy ... appearing what I would call froggy or nervous," moving his hands around and turning his head back and forth. Because he was thus making the officer nervous, the officer asked him to step over to the police car and put his hands on it. Officer Ambrosia did not attempt to search Brown nor did he ask to search him; the officer just wanted him to keep his hands on the car so that the officer could keep an eye on him. Brown took about two steps toward the car, then, notwithstanding the officer's instruction, screamed "No way!" and started running away. Officer Ambrosia and two other officers gave chase. While chasing the fleeing Brown, Officer Ambrosia saw him reach into his pocket and pull out a plastic baggie containing something which the officer thought might be drugs. One of the other two officers also chasing Brown testified he saw something clear or white in color in the baggie, which that officer also suspected might be drugs. As the two other officers continued directly after Brown, Officer Ambrosia took a detour around a house to try to cut him off. When Officer Ambrosia came around the house, he saw the other two officers pulling Brown down off a fence he had been trying to scale when they tackled him. After the officers secured him on the ground, one of the officers located the baggie containing thirty pieces of crack cocaine stuck in the vines on the top of the fence underneath where Brown had been when he was tackled. Then, after the contents of the baggie tested positive for cocaine, Brown was arrested for possession of the drugs.
*126 At the moment when Brown first made contact with Officer Ambrosia by running up to him and handing him his driver's license, Brown began a consensual encounter with the police officer. Such citizen-initiated encounter is admittedly an unusual occurrence in the instant circumstances as testified to by Officer Ambrosia. This bit of information was thus added to the then-existing totality of the circumstances at the scene. Then, while the consensual encounter was continuing, Brown began acting strangely, in the officer's mind, by getting "jumpy", acting "froggy or nervous," and moving his hands around as well as repeatedly turning his head back and forth. This bizarre activity made the officer nervous. When the officer told Brown to put his hands on the police cruiser, the consensual encounter at that moment turned into a stop under section 901.151, Florida Statutes (1991), because Brown was no longer free to leave. See State v. Wilson, 566 So.2d 585 (Fla. 2d DCA 1990). We find that based on the totality of the circumstances at this moment founded suspicion arose for the officer to stop Brown for the purpose of further investigating the situation. Not only were there the signs of extreme nervousness, the officer was aware that the area was known for drug activity where known drug dealers were at that moment gathered in Brown's near vicinity, the officer was acquainted with Brown due to prior contact, and Brown had done the extremely unusual act of spontaneously running up to the officer and offering him his driver's license, cutting the officer off from contact with others in the group. Cf. Murphy v. State, 512 So.2d 1006 (Fla. 4th DCA 1987), review denied, 520 So.2d 585 (Fla. 1988) (nervousness of driver plus high drug area plus nicer car than normally seen in surroundings plus seeing person hanging into car who fled at approach of officer equals founded suspicion); State v. Bullock, 460 So.2d 517 (Fla. 3d DCA 1984) (nervousness during consensual encounter plus travel under assumed name plus clearly incorrect denial of possession of luggage equaled founded suspicion); also cf. State v. Arnold, 475 So.2d 301 (Fla. 2d DCA 1985) (nervousness plus disheveled appearance in area where it was not uncommon for migrants to sleep in brush do not equal founded suspicion).
But before the officer had a chance to further investigate the suspicious situation, Brown turned and fled. Because Brown had been validly stopped for further inquiry by the officer, he did not have a right to leave and the officer was entitled to restrain him from seeking to escape. Jacobson v. State, 476 So.2d 1282, 1287 (Fla. 1985). During the ensuing effort to restrain Brown, which necessitated the chase as described above, probable cause to arrest or search Brown was provided by Brown himself when he displayed the baggie which appeared to these trained officers to contain crack cocaine. See Cross v. State, 560 So.2d 228 (Fla. 1990); P.L.R. v. State, 455 So.2d 363 (Fla. 1984); State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984); see also, McCoy v. State, 565 So.2d 860 (Fla. 2d DCA 1990) (probable cause found in similar circumstances even though object believed to be cocaine later tested negative).
In summary, because there was founded suspicion grounding the original stop at the police cruiser and the following events showed that the police did not violate Brown's fourth amendment safeguards, the circuit court erred in ordering suppression of the cocaine.
We reverse the order of suppression and remand for further proceedings.
SCHOONOVER and FRANK, JJ., concur.