GRIFFIN, Judge.
Appellant, Charles J. Austin [“Austin”], appeals his convictions for trafficking in cocaine[1] and carrying a concealed weapon.[2] On appeal, Austin presents two arguments which he maintains warrant reversal. First, Austin contends that the trial court improperly denied his motion to suppress evidence obtained through an illegal search and seizure; second, Austin suggests that the State made improper comments during trial which constituted fundamental error.[3]
At the hearing on the motion to suppress, Rodney Smith [“Smith”], an officer with the Ocala Police Department, testified that, in December 1991, a “citizen source” complained to him that Austin had been bringing drugs in and selling drugs from his vehicle in Parkside Gardens in Ocala. Smith testified that he has known this complainant personally for seven years, that he is gainfully employed, lives in the Ocala community and, to Smith’s knowledge, has no criminal record. Smith testified that this source said he had known Austin for eight to ten years. The source described Austin as a heavy set black male who wore his hair in a “jerry curl.” The source told Smith that Austin used to live in Ocala. The source then told Smith that he had personally witnessed Austin conducting these drug deals from about fifteen to thirty feet away.
Smith said that he next, heard from the source in late March 1992, when the source confirmed that the suspect was still selling drugs from his large, white car in Parkside *1248 Gardens. Thereafter, Smith told another officer, Felicia Bush, what he had learned from his source and advised her to call him if she saw the large, white vehicle on the road. On April 1, 1992, Officer Bush went to the spot where Officer Smith reported that Austin had been parking his car. Smith testified that the source told him the car was a Cadillac, but Officer Bush determined that the suspect’s large, white vehicle was a four door Buick Roadmaster, not a Cadillac. Smith testified that they have a similar appearance. Smith then went back to the parking spot himself, found the car, walked around it and verified that the vehicle was a Buick Road-master with out-of-town license plates.
On that same day, while at the scene of another call involving a shooting, Smith again saw his source. The source told Smith that he had just witnessed Austin selling drugs over at Parkside, out of the Buick Roadmas-ter. After completing his work at the scene of the shooting, Smith went to look for Austin in Parkside, but the ear was gone. Three weeks later, on April 18, 1992, Officer Bush called Smith and told him that the white Roadmaster had just been spotted on the highway. Officer Smith located the white Roadmaster, about three blocks from Park-side Gardens. Smith testified that he observed two occupants in the Roadmaster, a small black male and a large black, male, who appeared to “have some type of long curl.” Smith testified that he then pulled the vehicle over to do an investigative stop, “just as if [he] had a BOLO,” because of his information that the car was involved in criminal activity.
Once the vehicle was stopped, Smith observed that the driver had a stocky build and wore his hair in a “jerry curl.” The name on the driver’s license was Charles Austin, thus matching the name given for the suspect by Smith’s source. When Smith asked Austin if he could search his car, Austin refused, so Smith called for a drug dog. Upon arrival, approximately twenty to thirty minutes later, the dog “alerted” to Austin’s vehicle. The police then searched the vehicle and found a handgun concealed under the front seat and several bags of cocaine in the car. Austin moved to suppress the evidence obtained in this search, but the lower court denied the motion. We affirm.[4]
Under Florida law,[5] the investigative stop of an individual based upon a police officer’s founded suspicion of criminal activity is authorized. See e.g., Hills v. State, 629 So.2d 152 (Fla. 1st DCA 1993); Brown v. State, 592 So.2d 1237 (Fla. 1st DCA 1992). The police may stop and investigate a motor vehicle when there is a “ ‘founded’ suspicion of criminal activity in the mind of the police officer.” Kehoe v. State, 521 So.2d 1094, 1095 (Fla.1988).
Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the “totality of the circumstances — the whole picture,” [citation omitted], that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. [Emphasis in original.]
Trotman v. State, 581 So.2d 599 (Fla. 2d DCA 1991) (Altenbernd, J. dissenting, quoting Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).
Courts have held that information received from a confidential informant does not fall under the same scrutiny as information received from an anonymous caller. State v. Hadden, 629 So.2d 1043 (Fla. 2d DCA 1993). The citizen source who provides identification and presents information in person can be better evaluated by a police officer than an unknown voice over the telephone. Thus, any slight weaknesses in the factual information or the predicted behavior *1249 may be overcome by the fact that the informant’s identity was known and the information provided in person. See State v. Evans, 620 So.2d 802, 803 (Fla. 2d DCA 1993). Compare Williams v. State, 531 So.2d 246 (Fla. 5th DCA 1988). Therefore, factual information provided by a known informant that is imperfect can still be sufficient under the totality of the circumstances to provide an officer with reasonable suspicion. Evans, 620 So.2d at 803. Here the source claimed to have witnessed several criminal transactions by appellant.
Although it is true that stale information may not be used to create the founded suspicion necessary to justify an investigatory stop, see Jain v. State, 577 So.2d 1002 (Fla. 2d DCA 1991), the information, while three weeks old, was not stale. There was a series of communications about an ongoing pattern of criminal conduct consistent with the officer’s own knowledge of how drug transactions are conducted. In this case, the factual information given to Officer Smith by his informant, along with Smith’s verification of certain facts, were adequate to support the investigative stop and use of the drug dog for investigative purposes as soon as the vehicle was spotted in the area with Austin at the wheel. United States v. Brown, 24 F.3d 1223 (10th Cir.1994).
The investigatory stop did not constitute an invalid search and seizure in violation of Austin’s constitutional rights.
AFFIRMED.
HARRIS, C.J., and DAUKSCH, J., concur.

. § 893.135(1)(b), Fla.Stat. (1991).

. § 790.01(2), Fla.Stat. (1991).

.We find no fundamental error.

. An order granting or denying a motion to suppress is presumptively correct and a reviewing court should interpret the evidence and reasonable inferences and deductions drawn therefrom in a manner most favorable to sustaining the trial court’s ruling. Velez v. State, 554 So.2d 545, 547 n. 3 (Fla. 5th DCA 1989), review denied, 563 So.2d 635 (Fla.1990); Medina v. State, 466 So.2d 1046 (Fla.1985).

. § 901.151, Fla.Stat. (1991).