783 So.2d 284 (2001)
Michael FORD, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-4523.
District Court of Appeal of Florida, Second District.
January 17, 2001.
*285 James Marion Moorman, Public Defender, and Howardene Garrett, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
Michael Ford moved to suppress the cocaine he was charged with possessing. When the circuit court denied the motion, Ford pleaded guilty while reserving the right to appeal that ruling. We reverse. The drugs must be suppressed because they were seized in the course of an illegal detention.
At the hearing on the motion to suppress, a Tampa Police Department officer described the events leading to Ford's arrest. While the officer was on duty a woman named Mary Brooks approached him. He did not know Brooks. She related that about five minutes earlier she had seen a black man approach an older white man in front of a nearby store. She saw the white man put "something" in his pocket and give the black man cash. The white man then went inside the store. Brooks assumed she had witnessed a drug transaction. She pointed out Ford as the white man she had observed.
The policeman approached Ford and told him he was "a suspect in a possible drug deal." Ford said he had not done anything. The officer read him the Miranda[1] warning and told him that Brooks had identified him as a person she had seen "doing drug deals." At that point, the police officer testified, Ford was not free to leave. Ford consented to a search of his person and the officer found a rock of cocaine.
The legality of Ford's initial detention turns on whether law enforcement had a founded suspicion that he had committed, was committing or was about to commit a crime. See § 901.151, Fla.Stat. (1997); Popple v. State, 626 So.2d 185 (Fla. 1993). The legitimacy of the stop must be assessed by considering the totality of the circumstances surrounding it. See State v. Anderson, 591 So.2d 611, 612 (Fla.1992). The officer did not see Ford do anything suspicious; the stop was based entirely on Brooks's information. Citizen informants such as Brooks are considered reliable. See J.L. v. State, 727 So.2d 204, 206 (Fla. 1998), aff'd, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). But founded suspicion is dependent on both the informant's reliability and the content of the information she relays; courts consider both factors in determining whether the totality of the circumstances justifies a stop. See Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).
*286 We presume Brooks was reliable; we have no doubt she saw the transactions she described to the officer. But according to the policeman, the only fact Brooks relayed was that she saw a white man hand a black man money and receive something in return. This simple fact, standing alone, was just as consistent with completely legal behavior as it was with a drug transaction. A hand-to-hand exchange can warrant a detention when a law enforcement officer sees what transpired and his training and experience lead him to believe he has witnessed a drug transaction. See State v. Saums, 633 So.2d 538 (Fla. 2d DCA 1994) (upholding denial of motion to suppress where officer saw a man pass cash into a car and receive something in return; the officer testified the actions he saw were consistent with many street-level drug transactions he had observed in seven years as a police officer). But here the officer did not observe the transaction. He could not testify that the manner of the exchange resembled a drug deal.
As we explained in Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995), it is not absolutely necessary for an officer to witness drugs or money changing hands in order to develop the founded suspicion necessary for temporarily detaining a citizen to investigate whether a drug offense has been committed. The Burnette court discussed other factors that could lead law enforcement to reasonably suspect illegal drug activity is afoot: the reputation of the area for drug dealing; a history of multiple drug arrests at the sight, or ongoing surveillance of the area. See id. at 1171. Moreover, if the officer knew that one or both of the parties to the exchange had previously engaged in drug dealings, this would certainly be a fact that could raise suspicion. But the record in this case is devoid of any of these additional circumstances. The policeman did not know Ford, and the black man Brooks described had left the area. The officer offered no testimony about the reputation of the scene, or how many arrests, if any, had been made there. Without any of these additional circumstances, a citizen's report merely that a person has exchanged money for some unidentified item is simply insufficient to justify a detention.
Because the police did not have a founded suspicion to stop Ford, the voluntariness of Ford's consent to the search was tainted. As we stated in Jordan v. State, 707 So.2d 338, 339 (Fla. 2d DCA), review dismissed, 717 So.2d 538 (Fla.1998), if the initial detention is illegal, the State must prove by clear and convincing evidence "`that there has been an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given.'" Id. at 339 (citations omitted). No such break occurred here. The officer stopped Ford, told him he was a suspect, read him the Miranda warning and asked permission to search. We hold that Ford's consent was not voluntary.
We reverse the denial of Ford's dispositive motion to suppress and remand with directions to discharge him.
ALTENBERND, A.C.J., and WHATLEY, J., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).