GRIFFIN, J.
The defendant below, Roosevelt Glover [“Glover”], was charged by information with possession of cocaine with intent to sell or deliver. He filed a motion to suppress any statements he made to law enforcement, any observations made by law enforcement regarding him, any information or objects obtained by law enforcement from him, and the eighteen pieces of cocaine found on him. Subsequent to a hearing on the motion to suppress, the *920 motion was denied by the trial court. Glover pled nolo contendere and was adjudicated guilty by the trial court. He now appeals the final order of judgment and sentence, contending that the trial court erred in denying his motion to suppress. We affirm.
Officer Chris Myers [“Myers”], a thirteen-year veteran and Uniform Drug Unit member of the Orlando Police Department, testified at the hearing on the motion to suppress. Myers stated that he has over 250 hours of formal training in drug enforcement and has made between 1000 and 2000 narcotics-related arrests. Myers was assigned to the Drug Unit and was patrolling for illegal drug activity on June 28, 2001, in an unmarked vehicle, when he observed Glover from about ten to fifteen yards away about to place an unidentified object into the hand of an unknown female. When Glover saw him, he immediately drew his hand back and put the object in his mouth instead of in the hand of the female. The female then began to walk away. Myers did not observe any money changing hands, but his suspicions were aroused as a result of his training and experience with drug enforcement. Myers noted that it is very common for drug dealers to place drugs in their mouth at the sight of police, and he recognized Glover as a known drug dealer. Myers also noted that the place he observed Glover was an open field where drug dealers were known to congregate. He had personally arrested dozens of people for drug violations in that same location. Myers said that he approached Glover while another officer contacted the female. The other officer informed Myers that he found a crack pipe in the female’s possession, so Myers asked Glover what had transpired between him and the female. Glover told Myers he was merely talking to the female and denied giving her anything or putting anything in his mouth.
Based on what Myers had observed, he testified he believed Glover was lying and that he had been engaged in a drug transaction. He proceeded to conduct a pat-down search of Glover. Myers did not ask Glover for permission to search him. Myers testified that during the search he discovered “a round hard object in the pocket of [Glover’s] briefs which was not part of the human body,” which, based on his experience, he knew to be cocaine. Myers asked Glover to remove the object. When he refused, Myers handcuffed Glover and removed the object, a piece of plastic wrap which contained eighteen pieces of crack cocaine. Myers arrested Glover.
On direct examination, Myers was asked why he searched Glover. Myers replied:
When I initially saw the defendant, he was engaged in what I believed to be based on my experience and training and knowledge of him in this area in the sale of crack cocaine or delivery of crack cocaine, upon seeing the police he put this object which was small enough and consistent with the size of a piece of crack cocaine in his mouth which is what drug dealers commonly do. They either throw it down or put it in his [sic] mouth. He liked to put it in his mouth. The person who was standing next to [Glover], who I believed to be the buyer, immediately walked away and threw down the crack pipe and then when I confronted [Glover] with what I saw, he denied it all. He didn’t tell me I was eating a piece of candy. He didn’t come up with any kind of story about what he had in his hand or put in his mouth. He just said that it didn’t happen. That led me to believe that it wasn’t a piece of candy, it wasn’t a legitimate object, and *921 if he was selling this illegal substance, he probably had more on him.
Based on Myers’ and Smith’s testimony, the trial court concluded Myers had probable cause to conduct a warrantless arrest and search of Glover, and denied the motion to suppress.
As with almost all suppression cases, there are authorities on either side of the issue arising out of similar facts. The trial court referred to several such cases in its order denying Glover’s motion to suppress. The first is Knox v. State, 689 So.2d 1224 (Fla. 5th DCA 1997), in which this court affirmed the trial court’s denial of Knox’s motion to suppress. In Knox, law enforcement officers observed Knox for two hours. Over the course of that time, they witnessed him engage in several transactions with several different vehicles. He was seen passing something which the officers could not see to occupants inside each vehicle, and upon the vehicles driving away, the officers witnessed Knox with cash in his hands. However, the court concluded “from the totality of the circumstances that the officers’ observation of Knox’s conduct during the two-hour surveillance established sufficient probable cause for an experienced narcotics officer to believe that Knox was engaged in criminal conduct that justified a search for illegal drugs.” Id. at 1225.
Also cited in the trial court’s order is Williams v. State, 717 So.2d 1109 (Fla. 5th DCA 1998), where this court again affirmed a trial court’s denial of a motion to suppress, based on the following facts:
An experienced narcotics officer had under observation a specific location known from previous arrests to be a site of frequent drug sales. From his vantage point, he observed appellant, a person known to the officer as one who hangs out on the streets and has been subject to various arrests, after looking around to assure himself that no one was watching, reach into his buttocks area under his pants and produce something from which he extracted something small which he handed to two persons who had approached him in exchange for something that the officer could not identify ... Based on this observation, appellant was searched and cocaine was found.
Williams, 717 So.2d at 1109. We said it was clear that a commercial exchange had taken place, thus giving the officer probable cause to search for drugs under the totality of the circumstances.
The trial court also relied on Elliott v. State, 597 So.2d 916 (Fla. 4th DCA 1992). In Elliott, the order denying the motion to suppress was affirmed. A law enforcement officer was passing through an area known for cocaine trafficking when he observed Elliot exchange something with a passenger in a vehicle. Based on this observation, the officer believed a drug transaction had occurred, even though he did not actually see the contents of what was exchanged. He further witnessed Elliot placing a plastic baggie, which the officer knew to be a commonly used package for cocaine, in his pocket. The officer was a seventeen-year veteran who had been involved in hundreds of drug investigations, and he also recognized Elliot as a man he had seized cocaine from just two weeks earlier. Id. at 916-917. The court explained:
[GJiven the experience of the officer at the very location in question and with the recent experience with the appellant in question, what he observed we think established a course of conduct which was substantially more likely than not to be criminal activity rather than an innocent event. Certainly the officer had no doubt that he was witnessing a drug transaction. In view of all the evidence *922 the trial court was correct in concluding that there was probable cause to arrest and search the appellant.
Id. at 918.
Finally, State v. Caicedo, 622 So.2d 149 (Fla. 3d DCA 1993), was cited by the trial court in the order denying the motion to suppress. There, the law enforcement officer witnessed Caicedo make an exchange with another individual. He placed the item given to him in his mouth. The officer noted that both men were known to him from prior arrests involving drug activity. Caicedo’s mouth was searched and cocaine was discovered. Id. at 150. The officer testified at the hearing on the motion that it was common for drug buyers to place crack cocaine in their mouths immediately following a purchase. The court found that the totality of these circumstances justified the arrest and search of Caicedo. Id.
Glover relies on Coney v. State, 820 So.2d 1012 (Fla. 2d DCA 2002). In that case, law enforcement officers observed Coney in an area known for drug activity and arrests, where he exchanged an object with an individual for money. The officers pursued Coney, and upon approaching him saw that he had an object in his mouth. They ordered him to spit out the object, and a bag of marijuana was discovered. Coney, 820 So.2d at 1013. The court found that although the officers did have reasonable suspicion to detain, they did not have probable cause to search Coney’s mouth because “they did not see what was in Coney’s hand ... they did not see what was in Coney’s mouth ... and they did not see Coney involved in more than one transaction.” Id. at 1014.
Glover also relies on Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995). There, the court held that the hand-to-hand transaction along with the officer’s narcotics experience, the area being known for drug activity, the extended period of surveillance, the fact that many arrests had been made there in the past, and the exchange involving a known dealer gave rise to reasonable suspicion of illegal activity such that the officer was justified in detaining Burnette. However, the court held the totality of the circumstances described fell short of probable cause to search and arrest. Burnette, 658 So.2d at 1171.
We agree with the trial court that the particular facts of this case, in their totality, do justify the search of Glover.
AFFIRMED.
ORFINGER and TORPY, JJ., concur.