956 So.2d 535 (2007)
Darry CHANEY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1784.
District Court of Appeal of Florida, Fourth District.
May 16, 2007.
*536 Carey Haughwout, Public Defender, and Emily Ross-Booker, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Darry Chaney appeals his criminal conviction and sentence for possession with intent to sell cocaine within 1,000 feet of a church. He contends that the trial court erred in denying his motion to suppress the evidence obtained as a result of a warrantless search of his person. We agree and reverse.
Officer Kathleen Murphy of the Fort Pierce Police Department was the only witness who testified at the suppression hearing. Her testimony established the following: Officer Murphy was just leaving the Fort Pierce Police Department Substation when an unknown gentleman approached *537 her. The man told her that while he was working that day, repairing a two-story rooming house, he witnessed what he believed to be several drug transactions across the street at 1909 Avenue E. He told the officer that he saw several people drive up and walk over to a man, who, in exchange for money, gave those individuals some items. He told the officer he believed those items were drugs, although he did not specify the type of drugs. He did not describe the location as a known drug area and did not say that he knew or recognized any of the participants in the transactions.
The man described the scene as follows: a gray house with a chain link fence around it, and a black male wearing a red jersey shirt sitting in front of the house, accompanied by a black female wearing white. He said the couple had chairs set up inside the fence. He said he saw the male conduct several hand-to-hand transactions throughout the day and that he kept the "items" in the back pocket of his pants. The informant did not want to get involved and told Officer Murphy that he wanted to remain anonymous. Officer Murphy knew where he lived, however, and how to locate him.
Officer Murphy testified that, based on her experience as a police officer, she believed that the information she received was consistent with drug activity. She proceeded to the location with some backup police officers. When Officer Murphy arrived, she saw a gray house with a chain link fence directly across from the two-story rooming house. A black female wearing white and a black male wearing a red jersey were sitting outside on chairs. The officer did not observe any unusual behavior which would indicate drug sales or other criminal activity. Officer Murphy immediately approached the man wearing the red jersey, put her hands on the back of his pants, reached inside his pocket, and pulled out a large quantity of crack cocaine rocks. The man (appellant) was arrested and charged with possession with intent to sell cocaine within 1,000 feet of a church.
Appellant filed a motion to suppress the drugs. The trial court denied the motion to suppress, concluding that the information, which was relayed to the officer by a citizen informant who had observed several hand-to-hand transactions, was sufficient to establish probable cause.
Appellant first argues that the trial court improperly classified the person who provided the tip as a citizen informant rather than an anonymous tipster. He next argues that, even assuming that the tipster qualified as a citizen informant, the information he furnished the officer, at best, provided reasonable suspicion to stop appellant, not probable cause to arrest and search him. For the tip to establish probable cause, appellant argues, the officer must have corroborated it with independent evidence of criminal activity.
When we review a trial court's ruling on a motion to suppress, we defer to the trial court's determination of the historical facts leading up to the search. Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). However, we review the trial court's ultimate legal determination of probable cause de novo. Id.; Pagan v. State, 830 So.2d 792, 806 (Fla.2002).
Probable cause is required for a warrantless search. See U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court established a "totality of the circumstances" test as the proper test for determining probable cause. Probable cause exists when the facts and circumstances within an officer's knowledge are *538 sufficient to warrant a person of reasonable caution to believe that an offense has been committed. See Benefield v. State, 160 So.2d 706, 708 (Fla.1964); Curtis v. State, 748 So.2d 370, 374 (Fla. 4th DCA 2000).
In this case, the officer arrested appellant based on a citizen informant's observation of multiple hand-to-hand transactions across the street from his worksite. The issue is whether the informant's tip, standing alone, was sufficient under a "totality of the circumstances" standard, to give the officer probable cause to effectuate a warrantless search of appellant.
In Gates, the Supreme Court determined that in certain instances, a tip from a reliable informant can be sufficient to establish probable cause. The Court explained that the informant's veracity, reliability, and basis of knowledge are all relevant considerations in the totality-of-the-circumstances analysis. Gates, 462 U.S. at 233, 103 S.Ct. 2317.
Information from a "citizen-informant" is at the high end of the tip-reliability scale. State v. Maynard, 783 So.2d 226, 230 (Fla.2001); see also State v. Talbott, 425 So.2d 600, 602 (Fla. 4th DCA 1982). It does not fall under the same scrutiny as information received from an anonymous tipster. See Austin v. State, 640 So.2d 1247, 1248 (Fla. 5th DCA 1994) (citing State v. Hadden, 629 So.2d 1043 (Fla. 2d DCA 1993)). Appellant argues that the informant in this case was merely an anonymous tipster because, among other things, the officer had never met him before and did not include any identifying information about him in her police report. However, as the trial court noted in its suppression order, the officer testified that she knew where the informant lived and that she could find him if necessary. See Maynard, 783 So.2d at 230 ("an informant's actual name need not be known so long as her identity is readily discoverable"); State v. K.V., 821 So.2d 1127, 1128 (Fla. 4th DCA 2002) (same); State v. Evans, 692 So.2d 216, 219 (Fla. 4th DCA 1997) (same). Moreover, the informant came to the police substation to speak to the officer and presented his information in person. This face-to-face communication allowed the officer to better evaluate his credibility. See Austin, 640 So.2d at 1248 ("The citizen source who provides identification and presents information in person can be better evaluated by a police officer than an unknown voice over the telephone."). We find no error in the trial court's decision to classify the tipster as a citizen informant and presume him to be a reliable source.
Probable cause, however, depends upon the content of the information, as well as its degree of reliability. Austin, 640 So.2d at 1248; Ford v. State, 783 So.2d 284, 285 (Fla. 2nd DCA 2001) (citing Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).
A critical question in this case is whether the content of this particular tip was sufficient under the totality of the circumstances to provide Officer Murphy with probable cause to search appellant. Here, the citizen informant reported that he witnessed what he believed to be drug transactions based on seeing appellant hand items to several persons in exchange for money. Observations by an untrained layperson of multiple hand-to-hand transactions, standing alone, do not necessarily provide sufficient information for detention or arrest by a police officer. This is so because a police officer must filter the facts reported by a layperson through his or her own knowledge and experience in forming reasonable suspicion or probable cause. See Elliott v. State, 597 So.2d 916, 918 (Fla. 4th DCA 1992) ("Both the founded suspicion standard and the probable *539 cause standard require the officer to interpret a factual foundation in light of the officer's knowledge and experience.").
Florida courts have considered several factors to be significant in determining whether observation of a hand-to-hand transaction created reasonable suspicion or probable cause. These factors include the experience and training of the officer in narcotics investigations, reputation of the location for drug activity, history of previous arrests from that site, prior knowledge of the suspects, quality and extent of surveillance, and detailed description of the event. See Burnette v. State, 658 So.2d 1170 (Fla. 2d DCA 1995) (discussing factors deemed significant in assessing whether founded suspicion or probable cause was established when a hand-to-hand transaction was observed); Wilson v. State, 707 So.2d 893 (Fla. 2d DCA 1998) (applying the Burnette factors and holding that officers lacked reasonable suspicion to stop the defendant who was talking to individuals and asking if they wanted "something"); Elliott v. State, 597 So.2d 916 (Fla. 4th DCA 1992) (holding that probable cause existed to arrest and search the defendant based on the observations of an experienced police detective, who saw an exchange of hands between a passenger in a vehicle and the defendant, who was standing outside the vehicle in an area known for heavy drug trafficking; further, the detective had seized a quantity of cocaine from the defendant only two weeks before); State v. Caicedo, 622 So.2d 149 (Fla. 3d DCA 1993) (holding that probable cause existed for defendant's arrest and subsequent search incident to the arrest where police officer observed the defendant hand money to another man and then remove a small item from the man's outstretched hand and place the item in his mouth); Knox v. State, 689 So.2d 1224 (Fla. 5th DCA 1997) (holding that probable cause existed to search defendant for narcotics where an experienced narcotics officer, who had received complaints of narcotics dealing in the vicinity, conducted two-hour surveillance, during which he observed defendant approach vehicles, lean into the vehicles, and pass something to the occupants, and then be seen with cash in hand, even though items passed to the occupants of the vehicles were too small to be seen from the officers' hiding place); Revels v. State, 666 So.2d 213 (Fla. 2nd DCA 1995) (holding that probable cause existed when experienced police officers who were assigned to a certain house known for narcotics sales observed the defendant approach a car that pulled up, make a hand-to-hand exchange, and receive currency).
In this case, the record is devoid of any testimony that the location described by the citizen informant had any prior history of drug transactions or arrests or that the police officer had any prior knowledge of appellant's involvement in drug dealing. In addition, the state presented no testimony about the extent of the officer's training and experience in narcotics investigations. The officer merely testified that, based on her experience, she believed appellant was engaged in drug transactions. See Doctor v. State, 596 So.2d 442, 445 (Fla.1992) (stating that an officer's experience and training are relevant to the extent that they provide specific facts from which the officer could reasonably conclude that a crime was being committed during the situation in question); Revels, 666 So.2d at 216 (noting that an officer with years of drug experience is "more likely to know what to observe and to distinguish innocent behavior from incriminating behavior"). Further, the officer was uncertain whether the citizen informant could actually see any drugs being exchanged for money, and she did not conduct any surveillance or acquire additional information to confirm the informant's report of suspected drug activity. The officer corroborated the tip only as to *540 innocent details, such as a physical description of the location and the suspects.
We believe that this case is factually analogous to Ford v. State, 783 So.2d 284 (Fla. 2d DCA 2001). There, a citizen informant told the police officer that she saw a black man approach an older white man in front of a store and the white man hand the black man money and receive something in return. The police stopped the white man and obtained his consent to a search, which revealed a cocaine rock. The second district held that detention of the defendant was not justified for several reasons: the officer did not observe the transaction and could not testify that the manner of exchange resembled a drug deal; the officer did not know the defendant or the other man who handed him something; and there was no testimony about the reputation of the area for drug transactions. In reversing the defendant's conviction for possession of cocaine, the court noted that the tipster was a reliable citizen-informant, but considered these other factors in finding that the totality of the circumstances did not justify a stop.
In sum, the state failed to meet its burden to prove that Officer Murphy had probable cause to reach into appellant's pocket and seize the contents therein. The citizen informant's report of observing hand-to-hand transactions, standing alone, was insufficient under the totality of the circumstances to provide the officer with probable cause to search appellant. Accordingly, we reverse the order denying appellant's motion to suppress and remand this cause for appellant's discharge.
Reversed and Remanded.
STONE, J., and COLBATH, JEFFREY J., Associate Judge, concur.